# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| PAUL E. SALIBA, | \* | No. 22-0257V |
| | \* | |
| Petitioner, | \* | |
| | \* | Special Master Christian J. Moran |
| | \* | |
| | \* | Filed: March 31, 2026 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Robin J. Marzella, R. J. Marzella & Associates, P.C., Harrisburg, PA, for petitioner;
Emilie Williams, United States Dep't of Justice, Washington, D.C., for respondent.

### UNPUBLISHED DECISION DENYING COMPENSATION[1]

Petitioner, Paul E. Saliba, filed a petition for compensation on March 8, 2022, alleging that the that a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine caused him to suffer a neurologic condition, Guillain-Barré syndrome ("GBS"). On March 23, 2026, Mr. Saliba filed a motion for a decision dismissing his petition.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

## I.    **Procedural History**

Mr. Saliba filed his petition on March 8, 2022, alleging that the Tdap vaccine he received on March 18, 2019 caused him to suffer from GBS.  He filed medical records periodically.

Mr. Saliba was directed to identify any treating doctors who linked his Tdap vaccine to his GBS.  Mr. Saliba identified four potential instances.  Pet'r's Status Rep., filed Oct. 5, 2022.

By December 27, 2022, the parties were exploring settlement.  These discussions continued for more than a year.  During an April 9, 2024 status conference, the parties stated that settlement efforts had reached an impasse.  Mr. Saliba submitted additional medical records on May 9, 2024.  Exhibits 13-17.

The Secretary reviewed the material and recommended that compensation be denied.  Resp't's Rep., filed May 29, 2024.  Because Mr. Saliba was likely to seek a report from an expert, a set of instructions was issued on May 30, 2024.

The parties submitted reports from their experts.  Mr. Saliba supported his claim with an opinion from Dr. Heller.  Exhibit 19, filed Aug. 28, 2024.  The Secretary challenged aspects of Dr. Heller's opinion through reports from Dr. Merkle and Dr. He.  Exhibits A, filed Oct. 28, 2024; and C, filed Oct. 28, 2024.  In Dr. Heller's first report, he proposed molecular mimicry as a theory to connect the vaccines to GBS.  Exhibit 19 at 5-7.  However, Dr. He challenged many aspects to Dr. Heller's opinion. Exhibit C at 6-14.  In Dr. Heller's response, Dr. Heller did not supply any more details.  Instead, Dr. Heller stated his opinion is intended "to conceptualize how an external immune precipitant could *potentially* induce an errant, autoimmune response."  Exhibit 34 at 1 (italics in original).

A Tentative Finding Denying Entitlement / Order to Show Cause issued on January 22, 2026.  The order cited to leading appellate court opinions regarding molecular mimicry and advised that, when Dr. Heller's opinions were measured against these standards, Mr. Saliba did not appear likely to meet his burden of proof under Althen.  The order advised Mr. Saliba to consider whether he wanted to proceed with litigation.  If so, he would have the opportunity to file a brief arguing that he fulfilled all of the Althen prongs, focusing on why Dr. Heller's presentation of molecular mimicry is adequate.  Mr. Saliba would not be permitted to file any additional expert report, as he had already had ample opportunity to disclose opinions from experts.  Alternatively, Mr. Saliba could move to dismiss

2

his case.  Mr. Saliba was given a deadline of March 23, 2026 to respond.  On the day of the deadline, Mr. Saliba moved to dismiss his case.

## II.   <u>Analysis</u>

To receive compensation under the National Vaccine Injury Compensation Program ("Program"), a petitioner must prove either 1) that the vaccinee suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table— corresponding to one of the vaccinations, or 2) that the vaccinee suffered an injury that was actually caused by a vaccine.  <u>See</u> §§ 300aa-13(a)(1)(A) and 300aa-11(c)(1).  Under the Act, a petitioner may not be given a Program award based solely on the petitioner's claims alone.  Rather, the petition must be supported by either medical records or by the opinion of a competent physician.  § 300aa-13(a)(1).

In this case, Mr. Saliba filed medical records and expert reports in support of his claim.  Nevertheless, Mr. Saliba wishes to have his case dismissed and judgment entered against him.  Given Mr. Saliba's clear intent that a judgment issue in this case, the undersigned will construe this as a motion filed pursuant to 42 U.S.C. § 300aa-21(b) (regarding involuntary dismissal).

To conform to § 12(d)(3), a decision must "include findings of fact and conclusions of law."  To conform to section 12(d)(3), a decision must "include findings of fact and conclusions of law."  For causation-in-fact cases, the Federal Circuit has defined elements of a petitioner's claim.  Petitioners bear a burden to show by a preponderance of the evidence that the vaccination brought about their injury by providing:

(1) a medical theory causally connecting the vaccination and the injury;
(2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and
(3) a showing of a proximate temporal relationship between vaccination and injury.

<u>Althen v. Sec'y of Health & Hum. Servs.</u>, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

The dispositive prong is the first <u>Althen</u> prong, which concerns the medical theory.  Dr. Heller proposes molecular mimicry.  Exhibit 19 at 5-8.  To prevail on a theory of molecular mimicry, a petitioner must "offer reliable and persuasive medical or scientific evidence of some kind (whether expert testimony or

literature) that suggests the vaccine components could interact with the self structures as maintained." Johnson v. Sec'y of Health & Hum. Servs., No. 14-254V, 2018 WL 2051760, at *26 (Fed. Cl. Spec. Mstr. Mar. 23, 2018); see also Tullio v. Sec'y of Health & Hum. Servs., No. 15-51V, 2019 WL 7580149, at *15 (Fed. Cl. Spec. Mstr. Dec. 19, 2019), mot. for rev. denied, 149 Fed. Cl. 448 (2020) (finding that the theory of molecular mimicry was unpersuasive even when sequence homology was identified).

At the appropriate level of scrutiny, Mr. Saliba's evidence is not persuasive to establish that this theory is reliable. Dr. He raised several points against Dr. Heller's theory, concluding:

> In summary, the molecular mimicry theory has been under strong challenges by three categories of scientific findings. Mere sequence homologies between microbial pathogens and human proteins will not cause autoimmune diseases. Host immune responses are tightly controlled by multi-layers of tolerance mechanisms. In rare occasions, strong immune activation, primarily infections, can break these layers of tolerance mechanisms to cause autoimmune diseases such as GBS. However, there is no evidence to support Tdap vaccine possesses such a capability.

Exhibit C at 15. Dr. Heller largely did not answer Dr. He's points, instead stating that molecular mimicry "is merely a theory, used to conceptualize how an external immune precipitant could *potentially* induce an errant, autoimmune response. It is by no means the entire answer to a complex question." Exhibit 34 at 2. In all, Mr. Saliba's theory of molecular mimicry is too vague to carry his burden under Althen.

**Thus, this case is DISMISSED WITH PREJUDICE for insufficient proof. The Clerk shall enter judgment accordingly.** See Vaccine Rule 21(b).

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

4